UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 19-10104-ADB<br>DIOVANNI CARTER, )<br>)<br>         Defendant )<br>)<br>_____ ) | |

**MEMORANDUM AND ORDER ON DETENTION**

May 3, 2019

Hennessy, M.J.

      Defendant Diovanni Carter ("Defendant") is charged by indictment with one count of Conspiracy to Interfere with Commerce by Threats or Violence, in violation of 18 U.S.C. § 1951(a); one count of Interfering with Commerce by Threats or Violence, in violation of 18 U.S.C. § 1951(a), and aiding and abetting that offense, in violation of 18 U.S.C. § 2; one count of Discharging, Brandishing, Using, and Carrying a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A), and aiding and abetting that offense; and one count of Being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). The indictment is based on an armed robbery of a T-Mobile retailer in Brockton, and the discharge of multiple rounds of ammunition at police who pursued the robbers in a getaway car. The United States moved to detain Defendant on the grounds that the case involves a crime of violence, a crime for which Defendant faces life imprisonment, a serious risk that Defendant will flee, and a serious risk that Defendant will obstruct or attempt to obstruct justice. See 18 U.S.C.

§§ 3142(f)(1)(A), (f)(1)(B), (f)(2)(A), and (f)(2)(B).  The Court held an evidentiary hearing on April 22, 2019, at which it received exhibits, testimony and arguments of counsel.  Dkt. no. 28.  The Court took under advisement the Government's motion to detain.  Id.  Having considered the evidence, the Pretrial Services ("PTS") Report, and the parties' submissions and arguments, I now grant the Government's motion.

**Summary of the Evidence**

The evidence established that on January 26, 2019, at about 7:11 p.m., three masked and armed men—Darius Carter, Stephan Rosser-Stewart and Dennis Martin—entered a T-Mobile retail store in Brockton.  They forced the clerk into a back room where a safe containing cellular telephones and $4,500 was located.  Darius Carter struck the clerk with his handgun.  Rosser-Stewart emptied the safe into a black bag and a plastic trash bag.  The entry of the men with drawn firearms, as well as their activities in the back room, were captured on store cameras.  See Exs. 1 and 2.  They fled in a waiting getaway car.  According to Martin, the operator of the getaway car and the person who recruited him was Defendant.  The car was a white Malibu rental, and the rental agreement authorized Defendant to operate the Malibu.  See Ex. 7.

The spoils included a tracking device which T-Mobile planted in its inventory.  It was programed to activate when removed from the store, and its signal was broadcasted to T-Mobile and to Brockton Police.  It showed the getaway path of the Malibu heading generally east and south.  See Exs. 1 and 4.  Police pursued the Malibu, during which the occupants fired on the pursuing police, who returned no fire and stayed back.  According to ShotSpotter, 9 rounds were discharged along the getaway route at approximately 7:21 p.m.  See Ex. 3.

Police located the Malibu in a residential neighborhood at the intersection of Bristol and Carl Avenues in Brockton. The Malibu was abandoned; inside police recovered all the stolen cellular phones and cash, mail addressed to Defendant, and a spent 9mm shell casing. See Ex. 5.

A police search led to the arrest of three men. Martin was located behind a fence near the Malibu; he had removed his sneakers. Rosser-Stewart was located further south in the vicinity of 149 Carl Avenue. Darius Carter was arrested in the general area. Nearby, a canine located two firearms placed beneath a rock: a silver Armi Fratelli 9mm handgun containing no ammunition in its magazine, and a black Ruger LCP .380 caliber handgun with an extended magazine containing 13 rounds of ammunition. See Ex. 12.

On February 2, 2019, a resident of the area reported that a family member located in the vicinity of 108 Litchfield Street a loaded silver Jennings .22 caliber handgun. See Ex. 13. Litchfield Street is a generally east/west road that lies between the location of the Malibu at the northern end of Carl Avenue and 149 Carl Avenue. Video and other evidence shows that during the robbery, Darius Carter possessed the Armi Fratelli 9mm handgun, Martin the Ruger LCP .380 with an extended magazine, and Rosser-Stewart the Jennings .22 caliber handgun. See Exs. 1 and 2; see also Indictment.

Martin identified Defendant as the organizer of the heist, the driver, and the source of the Ruger LCP .380 and extended magazine that Martin possessed. Martin identified Defendant from a photo array.

After the arrests, the government identified Defendant's cellphone from business records of the temp agency through which he had done some work. See Ex. 15. Cell site location information for his phone on the day of the robbery shows that at approximately 3:00 p.m. it accessed service through a cell site approximately 500 meters from the T-Mobile store and the

sector facing the direction of the T-Mobile store.  See Ex. 16.  From 3:00 until 4:00 p.m., it accessed service through cell sites consistent with travel from Brockton to Boston.  Id.  From 4:00 until 5:30 p.m., and from 5:30 to 6:45 p.m., it accessed service through a cell site, though not the cell site closest to his residence in Dorchester Center.  Id.  From 6:45 to 6:54 p.m., it accessed service through cell sites consistent with travel from Dorchester south on 93.  Id.  From 7:05 through 7:15 p.m., it accessed service through a cell site approximately 500 meters from the T-Mobile store and the sector facing the direction of the T-Mobile store.  Id.

The government also obtained information about Defendant's Google account.  See Ex. 18.  Defendant's Google search history shows that early in the morning of the day of the robbery, Defendant's account was used to search for: "xtreme rentals Brockton ma" (sic) and "t mobile near me."  Id.  At approximately 5:30 p.m., the account was used to search for "glock 47" and "how you can build your own ak 47 glock or even ar 25535."  Id.  Beginning at 9:19 p.m., some two hours after the robbery, the account was used to search "enterprisenews."  Id.  The Brockton Enterprise News reports local information and news.  The next morning at 6:53 a.m., the account was used to search "breaking news channel 7."  Id.

On Monday, January 28, Defendant worked five hours for SimpliSafe in Braintree through the temp agency.  See Ex. 15.  According to an email the temp agency received from Defendant on January 28, 2019, Defendant was "[e]nding assignment today.  [H]as a lot going on in his life right now and cant (sic) work.  Will call when he is ready to work again."  Id.

**Law**

In order to detain a person pending trial under 18 U.S.C. §§ 3141 et seq. (the Bail Reform Act), the judicial officer must find (1) by clear and convincing evidence, that the defendant is a danger to the community, or (2) by a preponderance of the evidence, that the defendant poses a

risk of flight.  18 U.S.C. § 3142 (f); see United States v. Patriarca, 948 F.2d 789, 792–93 (1st Cir. 1991); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir.), cert. denied, 479 U.S. 978 (1986).  The judicial officer may then detain a person pending trial only if the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).

> In making this determination the judicial officer must consider the following factors:
>
> (1)   the nature and circumstances of the offense charged;
>
> (2)   the weight of the evidence against the person;
>
> (3)   the history and characteristics of the person, including:
>
> (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and,
>
> (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

Where, as here, a grand jury has found probable cause to believe that a defendant has committed an offense under § 924(c), it shall be presumed that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community. See 18 U.S.C. § 3142(e)(3)(B).  This presumption imposes only a burden of production on a defendant; the burden of persuasion to establish flight risk and dangerousness remains with the

government.  United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989).  To meet the burden, the defense must produce only "some [relevant] evidence."  United States v. Jessup, 757 F.2d 378, 381 (1st Cir. 1985).  The introduction of such evidence, however, does not eliminate the presumption entirely.  See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991).  Rather, the presumption remains in the case as one of the elements to be considered by the judicial officer.  See Jessup, 757 F.2d at 383.

**Defendant's Release Proposal**

Defendant proposes that he reside in Brockton with his grandmother, Nancy Carter.  He has previously lived with her for several years and has an excellent relationship with her.  Defendant proposes GPS monitoring, a curfew, and his resumption of employment at the temp agency, and music studio with which he has worked for approximately one year.

**Analysis**

Given Defendant's roots in the community, a strong family presence in Massachusetts, the availability of housing and a job in Massachusetts, I find that Defendant has rebutted the presumption against release.  I turn then to the § 3142(g) factors.

The nature and circumstances of the offense charged support detention on both grounds of risk of flight and danger.  Section 3142(g)(1) expressly requires the court to consider whether the offense charged is a crime of violence or involved a firearm.  Here, the Hobbs Act robbery and conspiracy are crimes of violence.  The other charged crimes involve a firearm Defendant possessed or discharged.  More practically, the criminal episode is rife with the potential for violence against T-Mobile employees, customers, the police, and others using the roads over which the participants fled.  Indeed, despite the T-Mobile clerk's apparent compliance, he was assaulted, and police in pursuit were fired upon some nine times.  Those are circumstances that

placed the public and the police in highly dangerous circumstances.  Defendant faces a 10-year mandatory minimum sentence if convicted under § 924(c) of discharging or aiding and abetting the discharge of a firearm.  The government calculates his criminal history category at IV, and his advisory guideline sentencing range at 121 to 151 months.  In my view, the information relevant to this factor supports detention.

    The weight of the evidence marginally supports detention.  As ably argued by Defendant's counsel, the case depends on accomplice witness testimony from Martin.  Defendant represents—and the government does not dispute—that Martin has a significant criminal history which includes violence, and a strong incentive to seek a sentencing benefit.  Hence, he is eminently impeachable.  On the other hand, in assessing Martin's credibility, the jury will be entitled to consider that Martin implicated himself in the robbery.  Moreover, there is some corroboration for his implication of Defendant, such as cell site location information.  Defendant dismisses this information by saying it shows no more than that he was in Brockton.  But the cell site and vector maps place Defendant's phone not just in Brockton, but within 500 meters of the cell site nearest the T-Mobile store precisely when the robbery occurred.  Martin could not have known this when he spoke with police.  Similarly, within two hours of the arrests, Defendant's Google account searched Brockton new sources.  It is unclear whether the robbery and arrests were at that point public information.  Finally, Defendant was an authorized driver of the Malibu, and the Malibu contained mail addressed to Defendant.  To be sure, none of this puts Defendant in the driver's seat; only Martin does.  However, in light of the reasons to credit Martin, I find this factor marginally supports detention.

    Defendant's history and characteristics certainly show Defendant's deep roots in the community.  He has lived his life in the Massachusetts, has significant family ties here, has a

multiple-year association with a local temp agency and a one-year association with a local recording studio.  Moreover, the record suggests he has some recent employment.  The owner of Nuumisic Studio states in substance that for the last year Defendant has been responsible for finding clients for paid studio sessions and development.  See Doc. 27, p. 4.  The day before the robbery, Defendant communicated to the temp agency that he is interested in working at "Simpli – can start Monday."  See Ex. 15.

However, Defendant's history also raises issues about release.  A November 5, 2018 record from the temp agency indicates Defendant has almost no work history.  It states:

> Looking for work – offered simplisafe and asked when he could start but then mentioned that he really only needs a letter stating that he is working for his parole officer but said that we cannot provide that since he hasn't worked with us since 2016.

Id.  In addition, Defendant has a significant adult criminal history.  According to the PTS Report, in 2009, at age 19, he was convicted of Possession of a Firearm without an FID card and possession to distribute marijuana.  A year later he was convicted of possession to distribute a Class B and a Class D drug.  The following year he was convicted in Superior Court of Possession of a Firearm without a Permit and Possession of Ammunition without an FID card.  He was sentenced to 3 years' jail.  While his release date is unclear, in 2013 he was Convicted of Possession of a Class B substance and sentenced to 9 months.  From January 2014 to his arrest in this case on or about March 6, 2019, Defendant was charged eight times.  The 2014 charges of murder and Possession of a Firearm without a Permit were nolle prosecuted; two charges in 2016 of Operating After a Suspended License were remitted and dismissed; a 2015 charge of Possession to Distribute Class B was Dismissed; a 2016 Suffolk Superior jury trial for Possession of a Firearm without a Permit Second Offense resulted in a not guilty verdict; a 2016 charge of Receiving Stolen Property was remitted and dismissed; a 2016 charge of Operating

After a Suspended License was dismissed; and 2018 firearm and assault charges were dismissed. Defendant violated every probationary sentence imposed. Boston Police Department incident reports describe instances of Defendant confronting police officers. See Ex. 20.

In my view, this information does not tip the risk of flight analysis for detention or release; but it does tip the dangerousness analysis toward detention. Defendant's adult criminal history involves repeated episodes of firearms possession, aggressive, even confrontational incidents with police officers, and an allegation with some support, that as recently as July 2018, Defendant fired shots in the direction of three individuals. See Ex. 20, p. 23. This history also suggests that Defendant is unwilling to comply with the law, police, release conditions and probation.

Despite the November 2018 note from the temp agency reproduced above, no evidence indicates that Defendant was on probation or parole at the time of offense or his arrest.

Finally, the Court must consider the nature and seriousness of the danger that would be posed by release. By virtue of the indictment, there is probable cause to believe Defendant participated in a serious offense involving three masked robbers, firearms, and firing on police officers in pursuit. This conduct connotes a gross disregard for the safety of law enforcement and the public. It comes on the heals of a criminal history of failed probationary and jail sentences. Using past conduct as a measure of future performance, Defendant's release would pose a serious danger to the community.

The rebutted presumption that no condition or combination of conditions will reasonably insure Defendant's appearance and the safety of the community is consistent with the recommendation of the PTS Office of detention.

**Conclusion**

For the foregoing reasons, I find that there is no condition or combination of conditions that will reasonably assure Defendant's appearance as required, or the safety of any other person or the community. Accordingly, I grant the Government's motion to detain Defendant.

**Defendant is hereby advised of his right under § 3145(b) to seek review of this Order.**

<u> / s / David H. Hennessy</u>
David H. Hennessy
United States Magistrate Judge