UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #19-CR-10104-ADB

_____

UNITED STATES

v.

DIOVANNI CARTER

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR
REVOCATION OF DETENTION ORDER**

**I.      STATEMENT OF PRIOR PROCEEDINGS.**

Defendant Diovanni Carter ["Carter"] was charged in a three-defendant indictment returned on March 27, 2019 with one count of conspiracy to interfere with commerce by threat or violence in violation of 18 U.S.C. § 1951(a); one substantive count of interfering with commerce by threat or violence in violation of 18 U.S.C. § 1951(a); one count of discharging, brandishing, using, and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A); and one count of being a felon-in-possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). According to the indictment, all of these charges arose out of Carter's alleged participation in the armed robbery of a T-Mobile store in Brockton on January 26, 2019.

The government moved for pretrial detention. Following a detention hearing held on April 22, 2019, Magistrate Judge David H. Hennessey issued a Memorandum and Order on Detention on May 3, 2019 granting the government's motion to detain Carter. *Docket Entry #32*. The Court

acknowledged Carter's "deep roots in the community" and determined that the weight of the evidence only "marginally supports detention." *Id.* at 7. However, the Court also found that the nature and circumstances of the offense charged support detention on grounds of both risk-of-flight and dangerousness, and that the defendant had a significant criminal history which "does tip the dangerousness analysis toward detention." *Id.* at 6, 9. Accordingly, the Court concluded that no condition or combination of conditions will reasonably assure Carter's appearance in court as required or the safety of any other person or the community and ordered him detained. *Id.* at 10.

On September 11, 2019, a grand jury returned a superceding indictment against Carter and his two co-defendants. The superceding indictment added an additional felon-in-possession count against Carter and reiterated the prior charges against him. *Docket Entry #55*. Carter has now been held in custody for approximately six months. No trial date has yet been set.

**II.     STATEMENT OF RELEVANT FACTS.**

    **A.     Carter's History, Personal Characteristics, and Prior Criminal Record.**

Diovanni Carter is 29 years old. He has lived in the Boston area for virtually his entire life. He graduated from Hyde Park High School in 2008. His parents and many other family members reside in the Boston area. Prior to his arrest on these charges, Carter had been working for the past several years doing warehouse work through a temporary employment agency, Express Employment, located in Braintree. He had also been working as the Artist and Repertoire Manager for Nuumusic Studio of Brockton. A previously-filed letter from Merlyne Mesidor, owner of Nuumusic, is attached hereto as *Exhibit 1*. According to Ms. Mesidor, Carter "is a vital member of our team at Nuumusic" who "has the potential to grow his skills and career to a level of mainstream recognition...." *Id.* Carter has three children and a fiancée, Shaatrona Sims. He is not on probation

or parole. Carter's paternal grandmother, Nancy Carter, has invited Carter to live with her in Brockton if he is released pending trial.

Carter does have a significant criminal history. His most recent conviction was more than six years ago, when he was convicted of simple possession of a Class B substance in the Stoughton District Court. His other Massachusetts criminal convictions are for possession of ammunition and possession with intent to distribute marihuana in 2009, possession of Class B and D in 2009, and carrying a firearm and ammunition without an FID card in 2011. He was also convicted of misdemeanor battery and providing false information in Barrow County Superior Court (Georgia) in 2013. Carter has faced a number of other criminal charges, but all have been dismissed, *nolle prossed*, or resulted in a not guilty verdict.

> B. **Nature and Circumstances of Alleged Offense Conduct and the Weight of the Evidence.**
>
> 1. **The alleged offense conduct.**

The alleged offense conduct is summarized in the Memorandum and Order on Detention issued by the Magistrate Judge at pp. 2-3:

> The evidence established that on January 26, 2019, at about 7:11 p.m., three masked and armed men – Darius Carter, Stephan Rosser-Stewart and Dennis Martin – entered a T-Mobile retail store in Brockton. They forced the clerk into a back room where a safe containing cellular telephones and $4,500 was located. Darius Carter struck the clerk with his handgun. Rosser-Stewart emptied the safe into a black bag and a plastic trash bag. The entry of the men with drawn firearms, as well as their activities in the back room, were captured on store cameras. See Exs. 1 and 2. They fled in a waiting getaway car. According to Martin, the operator of the getaway car and the person who recruited him was Defendant. The car was a white Malibu rental, and the rental agreement authorized Defendant to operate the Malibu. See Ex. 7.

The spoils including a tracking device which T-Mobile planted in its inventory I was programed to activate when removed from the store, and its signal was broadcasted to T-Mobile and to Brockton Police. It showed the getaway path of the Malibu heading generally east and south. <u>See</u> Exs. 1 and 4. Police pursued the Malibu, during which the occupants fired on the pursuing police, who returned no fire and stayed back. According to ShotSpotter, 9 rounds were discharged along the getaway route at approximately 7:21 p.m. <u>See</u> Ex. 3.

Police located the Malibu in a residential neighborhood at the intersection of Bristol and Carl Avenues in Brockton. The Malibu was abandoned; inside police recovered all the stolen cellular phones and cash, mail addressed to Defendant, and a spent 9mm shell casing. <u>See</u> Ex. 5.

A police search led to the arrest of three men. Martin was located behind a fence near the Malibu; he had removed his sneakers. Rosser-Stewart was located further south in the vicinity of 149 Carl Avenue. Darius Carter was arrested in the general area. Nearby, a canine located two firearms placed beneath a rock: a silver Armi Frateli 9mm handgun containing no ammunition in its magazine, and a black Ruger LCP .38 caliber handgun with an extended magazine containing 13 rounds of ammunition. <u>See</u> Ex.12.

On February 2, 2019, a resident of the area reported that a family member located in the vicinity of 108 Litchfield Street a loaded silver Jennings .22 caliber handgun. <u>See</u> Ex. 13. Litchfield Street is a generally east/west road that lies between the location of the Malibu at the northern of Carl Avenue and 149 Carl Avenue. Video and other evidence shows that during the robbery, Darius Carter possessed the Armi Frateli 9mm handgun, Martin the Ruger LCP .380 with an extended magazine, and Rosser-Stewart the Jennings .22 caliber handgun. <u>See</u> Exs. 1 and 2; <u>see also</u> Indictment.

Martin identified Defendant as the organizer of the heist, the driver, and the source of the Ruger LCP .380 and extended magazine that Martin possessed. Martin identified Defendant from a photo array.

The government does not allege that Carter entered the T-Mobile store during the robbery. Rather, the government contends that Carter planned the robbery, supplied weapons to the robbers, and drove the getaway car.

    **2.**    **The weight of the evidence against Carter.**

One of the three alleged robbers who entered the T-Mobile store, Dennis Martin, is cooperating with the government, presumably in an effort to lighten his own punishment. Martin was separately charged in No. 19-10140-DPW. He pled guilty pursuant to a cooperation agreement and is awaiting sentencing.

Since the only direct evidence against Carter produced in discovery to date comes from Martin, his credibility (or lack thereof) is clearly critical to assessing the weight of the government's case. As the Magistrate Judge noted: "Martin has a significant criminal history which includes violence, and a strong incentive to seek a sentencing benefit. Hence, he is eminently impeachable." *Memorandum and Order on Detention*, p. 7. Moreover, according to the Magistrate Judge, "... the case depends on accomplice witness testimony from Martin." *Id.* While he ultimately ordered Carter to be detained, the Magistrate Judge found that the weight of the evidence only "marginally" supported that decision. *Id.*

The circumstantial evidence provided in discovery to date which the government will presumably seek to introduce at trial against Carter includes the following: (1) Carter was an authorized driver of the rented Malibu, the vehicle contained mail addressed to him, and his fingerprint was found on a rear door of the car; (2) according to cell site location information, a phone allegedly used by Carter was in the area of the robbery at the time of the robbery and followed the approximate path of the flight of the robbers thereafter; and (3) a Google account linked to Carter was used to search for T-Mobile locations prior to the robbery and for news about the robbery thereafter.

## III. SUMMARY OF RELEVANT LAW.

In order to detain a defendant pending trial, the Court must find: (1) by clear and convincing evidence that the defendant is a danger to the community, or (2) by a preponderance of the evidence that the defendant poses a risk of flight. 18 U.S.C. § 3142(f). Even if one or both of these findings is made, the Court may order detention only if it determines that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). Where a grand jury has found probable cause to believe that a defendant has committed, *inter alia*, an offense under 18 U.S.C. § 924(c), it is presumed that no condition or combination of conditions will suffice. 18 U.S.C. § 3142(e)(3)(B). This presumption imposes only a burden of production on a defendant; the burden of persuasion remains with the government. *United States v. Moss*, 887 F.2d 333, 338 (1st Cir. 1989).

A defendant may move to revoke a detention order pursuant to 18 U.S.C. § 3145(b). In adjudicating such a motion, the District Court should engage in *de novo* review of the issues respecting detention or release. *United States v. Tortora*, 922 F.2d 880, 883, n. 4 (1st Cir. 1990). In doing so, "[t]he Court may reject the Magistrate Judge's fact-finding and start the hearing anew or may accept the findings of fact made by the Magistrate and hear additional facts and argument." *United States v. Oliveira*, 238 F.Supp.3d 165, 167 (D.MA. 2017) (Gorton, J.). *See also United States v. Cross*, 389 F.Supp.3d 140, 142 (D.MA. 2019).

## IV. APPLICATION OF LAW TO FACTS.

The Court has at its disposal ample tools to fashion conditions which will reasonably assure Carter's appearance in court as required and the safety of the community. As noted above, Carter has been invited by his paternal grandmother, Nancy Carter, to live with her in Brockton if he is

released pending trial. In order to keep track of Carter's physical whereabouts, the Court could choose to impose GPS monitoring and a curfew. It could even choose to place Carter on house arrest with exceptions for employment, court appearances, medical appointments, and the like. Based upon his longstanding ties to the community, Carter does not pose a significant risk of flight, particularly under such conditions. While he does have a record, it has been more than six years since his last criminal conviction, and the safety of the community can reasonably be safeguarded through the imposition of appropriate conditions of release.

While Carter faces serious charges, the evidence against him appears to be marginal, at best. Moreover, Carter has already been locked up in this case for more than six months, and no trial date has yet been set. Under the circumstances, the balance of equities tips in favor of release. Accordingly, Carter requests that the Court revoke the prior order of detention and order him released on appropriate conditions forthwith.

Respectfully submitted,

**DIOVANNI CARTER**

By his attorney,

/s/ James L. Sultan
James L. Sultan, BBO #488400
Rankin & Sultan
151 Merrimac Street, 2nd Floor
Boston, MA 02114
(617) 720-0011

**CERTIFICATE OF SERVICE**

    I hereby certify that this document(s) filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 19, 2019.

                                                           /s/ James L. Sultan