UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * * * * * | |
| v. | * * | Civil Action No. 19-cr-10104-ADB-1 |
| DIOVANNI CARTER. | * * * * * | |

# **MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER**

BURROUGHS, D.J.

Diovanni Carter ("Carter") is one of three defendants indicted on charges stemming from the March 27, 2019 robbery of a T-Mobile store in Brockton that escalated into to a police chase during which the perpetrators fired their weapons at police officers from their getaway car. The indictment charges Carter with conspiring to interfere with commerce by threat or violence in violation of 18 U.S.C. § 1951(a); interfering with commerce by threat or violence in violation of 18 U.S.C. § 1951(a); discharging, brandishing, using, and carrying a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).

At Carter's arraignment on April 5, 2019, the government moved for detention. The Court held a detention hearing on April 22, 2019. On May 3, 2019, Magistrate Judge Hennessey granted the government's motion to detain, finding that Carter was a flight risk and that his "release would pose a serious danger to the community" based on his significant criminal history and the nature of the charged offense. [ECF No. 32 at 6, 9].

On September 11, 2019, a grand jury returned a superceding indictment against Carter which added an additional felon-in-possession count. [ECF No. 55]. On September 19, 2019, Carter moved to revoke the detention order. [ECF No. 61]. On October 1, 2019, the government opposed. [ECF No. 81]. For the reasons explained herein, Carter's motion to revoke the detention order [ECF No. 61] is DENIED.

**I.      BACKGROUND**

On January 26, 2019, three men armed with handguns robbed a T-Mobile store in Brockton. [ECF No. 86-1]. Two of the men entered the store, pointed their firearms at the store clerk, and directed him to the back of the store where the inventory was kept. [Id.]. As the clerk entered the security code to access the back room that contained the store's inventory, one of the armed men struck the clerk in the head with his firearm. [ECF No. 86-1; Apr. 22, 2019 Hr'g Tr. at 13]. The third man later entered the store and proceeded to the inventory room. [ECF No. 86-1]. The men then stole approximately $20,000 worth of cell phones and tablets and $4,500 in currency. [Apr. 22, 2019 Hr'g Tr. at 10]. Carter remained outside of the store in the getaway car, a white Chevy Malibu, which was rented in his name. [Id. at 15, 19, 39, 62–63].

Unbeknownst to the perpetrators, one of the stolen electronic devices was a GPS tracking device that provided real-time tracking information to T-Mobile's security company. [Id. at 16–19]. The tracking information was reported to the Brockton Police Department, who intercepted the getaway car in a residential neighborhood and attempted to stop the car and apprehend the perpetrators. [Id.]. According to the lead officer in pursuit, the perpetrators began shooting at the police cruisers. [Id. at 21–28]. The City of Brockton's ShotSpotter system, which monitors and records sound frequencies of gunfire, reported a total of nine gunshots fired at the time of the incident, close to where the officers were pursuing the perpetrators. [ECF No. 86-3 at 4–7].

The perpetrators abandoned the getaway car in the residential neighborhood and ditched their weapons throughout the neighborhood as they ran away. [Apr. 22, 2019 Hr'g Tr. at 23–27]. The three men who had entered the T-Mobile store were apprehended that night. [Id. at 29–35]. Officers subsequently searched the car and found mail addressed to Carter and a Hertz rental agreement that identified him as the authorized operator of the vehicle. [Id. at 36–39]. Officers also found Carter's fingerprint on the car's rear passenger door. [Id. at 56]. A warrant was issued for Carter's arrest.

By following up on the phone number associated with the Hertz rental car, officers were able to find Carter's email address and obtain his Google search history. [Id. at 40–42, 56–62]. On the morning of the arrest, a Google account associated with Carter's email address was used to search for the location of local T-Mobile stores. [Id. at 56–62]. The account was also used to search for news reports of the robbery in the hours after the other suspects were apprehended. [Id.]. One of the apprehended perpetrators, who subsequently identified Carter, has told the government that Carter orchestrated the robbery, drove the getaway car, and provided one of the firearms. [Id. at 9–15, 62–65, 78–80]. Finally, cell site location information associated with Carter's phone number suggests that he was within a few hundred meters of the T-Mobile store at the time of the robbery. [Id. at 47–50; ECF No. 86-16].

## II. DISCUSSION

The Court reviews the Magistrate Judge's pretrial detention order *de novo*. United States v. Marquez, 113 F. Supp. 2d 125, 127 (D. Mass. 2000) (citing United States v. Tortora, 922 F.2d 880, 882 n.4 (1st Cir. 1990)). To support pretrial detention, the government must demonstrate (1) by a preponderance of the evidence that the defendant poses a flight risk, or (2) by clear and convincing evidence that the defendant is a danger to the community. See United States v.

Patriarca, 948 F.2d 789, 792–93 (1st Cir. 1991). As a general rule, the Court must determine whether any condition or combination of conditions will assure the defendant's appearance and the safety of people in the community. 18 U.S.C. § 3142(e). Where a grand jury has found probable cause to believe that a defendant committed an offense under § 924(c), however, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and safety of the community . . . ." 18 U.S.C. § 3142(e)(3)(B). That presumption shifts the burden to the defendant, who must introduce "some evidence" to the contrary. United States v. O'Brien, 895 F.2d 810, 815 (1st Cir. 1990) (quoting United States v. Jessup, 757 F.2d 378, 381 (1st Cir. 1985)). Even if a defendant provides evidence to rebut this presumption, the presumption "continues to operate as one factor to be considered by the court in determining whether the defendant must be detained, with the government continuing to bear the burden of proving that no condition or combination of conditions short of detention would assure the defendant's appearance and protect the community. Id.

In determining whether pre-trial detention is appropriate, the Court must consider the factors articulated in 18 U.S.C. § 3142(g): the nature of the offense, including whether the offense is a crime of violence or involved the use of a firearm; the weight of the evidence against the defendant; the defendant's criminal history; and the risk of danger to the community if the defendant was to be released. 18 U.S.C. § 3142(g)(1–4).

Carter argues that the Court could ensure his appearance and the community's safety through a combination of his staying with his grandmother and the Court imposing GPS monitoring and a curfew, or house arrest. [ECF No. 62 at 6–7]. The Court disagrees and finds

4

that detention is necessary to reasonably assure Carter's appearance and the safety of the community.

First, the nature of the offense and the weight of the evidence against Carter supports pretrial detention. A grand jury has found probable cause to believe that Carter participated in a robbery, which included the use of firearms, threatening a store clerk, and shooting at police during a subsequent chase. This determination of probable cause is bolstered by the testimony of a cooperating co-defendant who claims that Carter orchestrated the robbery and provided one of the firearms. His testimony is corroborated by other evidence, including GPS tracking location information, cell-site location information, and Carter's internet search history. Although Carter is not personally accused of threatening or assaulting the T-Mobile store clerk, there is evidence that he provided one of the firearms and even more compelling evidence that he led the police on a motor vehicle chase through a residential neighborhood while his co-conspirators indiscriminately fired bullets from the car. The strength of this evidence and the nature of the charged offense are more than sufficient to establish dangerousness.

Further, the Court finds that Carter's criminal history supports the conclusion that he poses both a risk of flight and a danger to the community. Though the Court understands that Carter's most recent conviction was more than six years ago, his criminal history is nonetheless significant. It includes multiple firearms possession offenses, accusations of domestic violence and murder, confrontational incidents with police officers, and "an allegation with some support, that as recently as July 2018, [Carter] fired shots in the direction of three individuals" [ECF No. 10 at 9; ECF No. 86-19 at 11–16], all of which suggest that he could pose a danger to the community if released. In terms of his risk of flight, Carter's criminal history evidences a repeated failure to respect legal authority, which suggests a willingness to flee if the opportunity

5

presents itself. As examples, he has frequently fled from the police, attempted to disrupt police investigations, and much of the conduct underlying his convictions seemingly took place while Carter was on pretrial release or probation. [ECF No. 86-19 at 11–16].

## III. CONCLUSION

In sum, the government has demonstrated by clear and convincing evidence that Carter is a danger to the community and by the preponderance of the evidence that Carter poses a risk of flight. Accordingly, Carter's motion for revocation of his detention order [ECF No. 61] is DENIED.

**SO ORDERED.**

October 25, 2019  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE