UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * * * * * | |
| v. | * * | Criminal Action No. 19-cr-10104-ADB-1 |
| DIOVANNI CARTER. | * * * * * | |

**MEMORANDUM AND ORDER ON MOTIONS *IN LIMINE*** 

BURROUGHS, D.J.

Defendant Diovanni Carter ("Defendant") is one of three defendants indicted on charges related to the March 27, 2019 robbery of a T-Mobile store in Brockton that escalated into a police chase during which the perpetrators fired their weapons at police officers from their getaway car. [ECF No. 55]. The Defendant has been charged with conspiracy to interfere with commerce by robbery (Count I); interference with commerce by robbery (Count II); discharging, brandishing, using, and carrying a firearm in relation to a crime of violence (Count III); and being a felon in possession of firearms and ammunition (Count IV, Count V). [ECF No. 55 at 1–6].

Presently before the Court are the Government's motions *in limine* to admit statements made by alleged coconspirators as substantive evidence pursuant to Federal Rule of Evidence 801(d)(2)(E), [ECF No. 119], and to admit a recorded jail call involving coconspirator Darius Carter, [ECF No. 120]. For the reasons stated below, the motion to admit the alleged statements of the Defendant's coconspirators, [ECF No. 119], is DENIED as to alleged post-arrest

coconspirator statements made at the police station.[1]  The motion to admit the jail recording of codefendant Darius Carter, [ECF No. 120], is <u>GRANTED</u> in part and <u>DENIED</u> in part.

## I.   POST-ARREST STATEMENTS AT THE BROCKTON POLICE STATION

The Government seeks to admit testimony from a cooperating coconspirator that he spoke with Defendant's alleged coconspirators Stephan Rosser-Stewart ("Rosser-Stewart") and Darius Carter ("Darius") at the Brockton Police holding cell following their arrest.  [ECF No. 119 at 5–6].  "In particular the [G]overnment anticipates testimony concerning a conversation between Rosser-Stewart and Darius Carter concerning the fact that Rosser-Stewart had shot Darius Carter with a .22 caliber firearm" and that the Defendant had not yet been apprehended.  [<u>Id.</u>].  The Defendant admits that the statements are relevant, but argues that they are hearsay not made by a coconspirator and not made in furtherance of the conspiracy.  [ECF No. 172, 2/13/20 Hearing; ECF No. 144 at 1, 1 n.1].

Under Rule 801(d)(2)(E), statements "offered against an opposing party and . . . made by the party's coconspirator during and in furtherance of the conspiracy" are not excluded as hearsay.  Fed. R. Evid. 801(d)(2)(E).  The statements may therefore be admitted for the truth of the matter asserted if the Government can demonstrate (1) that the conspiracy existed, (2) that the Defendant was a member of the conspiracy, (3) that the declarations were made by members of the conspiracy, and (4) that the statements were made in furtherance of the conspiracy.  See <u>United States v. Diaz</u>, 670 F.3d 332, 348 (1st Cir. 2012).

"The determination of whether a coconspirator's statement is in furtherance of the conspiracy is, like the determination of the existence of a conspiracy, a 'preliminary question of

---

[1] The Court previously admitted the other statements addressed in the Government's motion as more fully set forth on the record on February 13, 2020.  [ECF No. 172, 2/13/20 Hearing].

2

fact . . . resolved by the trial judge' who must apply a preponderance-of-the-evidence standard." United States v. Wright, 285 F. Supp. 443, 456 (D. Mass. 2018) (quoting United States v. Piper, 298 F.3d 47, 54 (1st Cir. 2002)).  The statement at issue is, itself, insufficient to establish the existence of the conspiracy.  See Piper, 298 F.3d at 52.  Instead, the Court must consider extrinsic evidence to "delineate the conspiracy and corroborate the declarant's and the [D]efendant's roles in it."  Id.

"The 'in furtherance' requirement represents a real limitation on the admissibility of coconspirator statements . . . ."  Id. at 54.  "[T]here is no precise formula for determining whether a coconspirator statement advances a conspiracy.  Generally speaking, however, a coconspirator's statement is considered to be in furtherance of the conspiracy as long as it tends to promote one or more objects of the conspiracy."  Id.; see United States v. Martinez-Medina, 279 F.3d 105, 117 (1st Cir. 2002) (explaining that a statement is made "in furtherance" of the conspiracy "as long as it can be said to advance the goals of the conspiracy in some way").  "There can be no furtherance of a conspiracy that has ended."  Lutwak v. United States, 344 U.S. 604, 617–18 (1953).  "However, although arrest may often end a defendant's role in a conspiracy, each case must be decided on its own facts."  United States v. Guerro, 693 F.2d 10, 13 (1st Cir. 1982).  Though "acts of concealment done in furtherance of the main criminal objective of the conspiracy" can prolong the conspiracy, "acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime" do not prolong the conspiracy.  Grunewald v. United States, 353 U.S. 391, 405 (1957).  In United States v. Wright, for example, the court found that a coconspirator's statements made after a defendant's arrest were admissible because the conspiracy continued after the defendant's arrest.  285 F. Supp. 3d at 455–56.  In that case, however, the defendant was part of a conspiracy to

provide material support to ISIS, an ongoing conspiracy that was able to continue even after the defendant was arrested. Id. at 448.

In this case, the Defendant is alleged to have conspired to obstruct commerce by robbing a T-Mobile store. [ECF No. 55 at 2]. The Government has provided sufficient evidence to demonstrate the existence of a conspiracy by a preponderance of the evidence, including that a coconspirator identified the Defendant and his alleged role in the conspiracy. The Government has not proven, however, that the coconspirator statements at the Brockton police station, made after the T-Mobile robbery and ensuing car chase, were made as part of that conspiracy or in furtherance of the conspiracy. See, e.g., United States v. Alcorta, 853 F.3d 1123, 1140 (10th Cir. 2017) ("Statements made after the objectives of the conspiracy have either failed or been achieved are not made during the conspiracy and must be excluded. Therefore, when an arrest terminates the conspiracy, postarrest statements of any kind, including those made to prevent detection or punishment for the terminated conspiracy, are inadmissible because they were not made during the conspiracy." (citations omitted)); United States v. Arce, 997 F.2d 1123, 1128 (5th Cir. 1993) ("[O]rdinarily, a person's participation in a conspiracy ends when the person is arrested for his role in the conspiracy." (internal quotation marks omitted)).

According to the indictment, the charged conspiracy continued through March 13, 2019. [ECF No. 55 at 2]. The object of the conspiracy, however, was to interfere with commerce by robbing a T-Mobile store on a specific date, January 26, 2019. [Id.]. The indictment alleges that the defendants "unlawfully agree[d] to take and obtain personal property belonging to, and in the care, custody, control, management and possession of Express Stores, D/B/A T-Mobile, a business engaged in the sale and servicing of cellular phones and cellular phone services plans in interstate and foreign commerce, by means of actual and threatened force, and violence, and fear

of injury." [Id. at 2]. Though it is possible that the conspiracy continued after the coconspirators were apprehended, the Court cannot find, by a preponderance of the evidence, that the conspiracy was ongoing at the time that the indicted coconspirators were in custody at the Brockton Police Department. Therefore, the statements made by Darius and Rosser-Stewart are not admissible as statements from a coconspirator made in furtherance of the conspiracy.

## II.    JAIL PHONE CALL

The Government also seeks to admit a recorded phone call made by Darius while awaiting trial, which the Government argues is not hearsay because it is not offered for the truth of the matter asserted.[2]  [ECF No. 119 at 6; ECF No. 120 at 1].

On March 5, 2019, Darius, an indicted coconspirator, made a call from jail in which he was told by his mother, identified as Lori, that the police had arrested the Defendant. [ECF No. 120 at 1–2]. Later in the call, Darius tells someone else, identified as Craig, that the Defendant should keep his "mouth closed" and that someone else was already "snitching." [ECF No. 120 at 3]. The Government argues that the evidence should be admitted "for the fact that such a request or instruction was in fact made by Darius Carter, which on its own, constitutes evidence of

---

[2] Because the Court has already determined that the statements at the Brockton Police Department were not made in furtherance of the conspiracy, which had already ended, the Court will not consider the Government's argument in the alternative that Darius' statements during the jail phone call, after the Defendant had been arrested, could be admitted as statements from a coconspirator made in furtherance of the conspiracy. See United States v. Meises, 645 F.3d 5, 18 n.21 (1st Cir. 2011) (explaining that "[t]here is no question that the hearsay exception for co-conspirator statements made 'during the course and in furtherance of the conspiracy' does not apply to [] post-arrest statements" made after all conspirators have been arrested (first citing Fed. R. Evid. 801(d)(2)(E) and then citing United States v. Lombard, 72 F.3d 170, 189 n.25 (1st Cir. 1995))); Lombard, 72 F.3d at 189 n.25 ("The co-conspirator exception could not have applied to the former testimony, because the conspiracy had been terminated at least by the date that the co-conspirators were arrested."); United States v. Palow, 777 F.2d 52, 57 (1st Cir. 1985) ("[I]t is beyond doubt that the challenged post-arrest statements were not made in furtherance of the conspiracy.").

conspiracy." [ECF No. 120 at 6]. The Government asserts that by telling his parents that the Defendant should remain quiet in order to minimize the creation of additional evidence, Darius was admitting that the conspiracy existed.

As a preliminary matter, much of the recorded conversation contains factual assertions which, if admitted for the truth of the matter asserted, would be hearsay. Though the Government seeks to admit certain statements as commands or instructions, the recording also includes references to the time and place of the Defendant's arrest. See, e.g., [ECF No. 120-1 at 1–2 (informing Darius that "[t]hey caught up with ya boy," that the Defendant was in "Brockton" and would be "out there tomorrow," and that the Defendant was arrested "in Mattapan Square")]. "Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." Anderson v. United States, 417 U.S. 211, 219 (1974). The factual assertions are therefore inadmissible as evidence of the truth of the matter asserted, including the time and place of the Defendant's arrest.

Commands and instructions are generally not hearsay because they are not admitted for the truth of the matter asserted. See United States v. Murphy, 193 F.3d 1, 5 (1st Cir. 1999) ("[T]he out-of-court statements in question were simply directions . . . and not statements of fact at all."); see also United States v. Kuthuru, 665 F. App'x 34, 38 (2d Cir. 2016) ("Questions and commands are ordinarily not hearsay because they are not offered for the truth of the matter asserted . . . ."); United States v. Murphy, 193 F.3d 1, 5 (1st Cir. 1999) ("[T]he out-of-court statements in question were simply directions . . . and not statements of fact at all."); United States v. Reilly, 33 F.3d 1396, 1410 (3d Cir. 1994) ("Instructions to an individual to do something are . . . not hearsay because they are not declarations of fact and therefore are not capable of being true or false." (internal citations omitted)); United States v. Dandy, 998 F.2d

6

1344, 1351 (6th Cir. 1993) (finding that the statement "tell him to get off my back and get himself another patsy" was not an assertion); [ECF No. 146 at 3]. In this case, the Government seeks to introduce the following commands, that were intended to reach the Defendant: "Whenever you all speak to that kid Dio, just let that n**** know, keep his f***ing mouth closed. Don't even be talking;" and "[W]e already got the n****, co-d snitching, so. That's the, that's the most we need right now. So that n**** don't need . . . . He don't need to be running his mouth, telling nobody about the case, nothing." [ECF No. 120]. The commands are not hearsay, because they are not admitted for the truth of the matter asserted.

The Defendant argues that the commands should nonetheless be excluded, first, because the commands are irrelevant and, second, because admitting these statements would be unduly prejudicial under Federal Rule of Evidence 403. As to relevance, statements of an alleged coconspirator not offered for the truth of the matter asserted are admissible "as long as they [a]re relevant in some way to prove the conspiracy charged . . . ." United States v. Munson, 819 F.2d 337 (1st Cir. 1987). Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact or consequence to determining the case more or less probable than it would be without the evidence. Fed. R. Evid. 401. The Defendant argues that a conversation between the Defendant's brother and his parents five weeks after the robbery isn't relevant to determine whether the Defendant participated in the robbery. The Court finds, however, that the statement clears the low bar for relevance. See United States v. Acevedo- Hernández, 898 F.3d 150, 168 (1st Cir. 2018).

Even relevant evidence is subject to exclusion if it its prejudicial effect outweighs its probative value. Id. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  "A prosecutor cannot justify the receipt of prejudicial, inadmissible evidence simply by calling it 'background' or 'context' evidence, or by asserting that it has a non-hearsay relevance to an issue that is itself not relevant."  United States v. Benitez-Avila, 570 F.3d 364, 369 (1st Cir. 2009).  In this case, the commands serve as evidence of the conspiracy.  The statements do not place the Defendant at the scene or describe his role in the conspiracy in a way that could be unduly prejudicial.  They are merely commands intended for the Defendant because of his alleged knowledge of the underlying conspiracy.  The statements are therefore admissible as relevant nonhearsay that is not unduly prejudicial.

### III. CONCLUSION

Accordingly, the motion to admit the alleged statements of the Defendant's coconspirators, [ECF No. 119], is DENIED as to alleged post-arrest coconspirator statements made at the police station.  The motion to admit the jail recording of codefendant Darius Carter, [ECF No. 120], is GRANTED in part and DENIED in part.  The Government may introduce the following from the recording: "Whenever you all speak to that kid Dio, just let that n**** know, keep his f***ing mouth closed.  Don't even be talking;" and "[W]e already got the n****, co-d snitching, so.  That's the, that's the most we need right now.  So that n**** don't need . . . . He don't need to be running his mouth, telling nobody about the case, nothing."

**SO ORDERED.**

February 28, 2020                                     /s/ Allison D. Burroughs
                                                                   ALLISON D. BURROUGHS
                                                                   U.S. DISTRICT JUDGE