UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * * * * * * | |
| v. | * | Criminal Action No. 19-cr-10104-ADB-1 |
| DIOVANNI CARTER. | * * * * * | |

**MEMORANDUM AND ORDER
ON GOVERNMENT'S *EX PARTE* MOTION FOR A PROTECTIVE ORDER**

BURROUGHS, D.J.

Defendant Diovanni Carter ("Defendant") is one of three defendants indicted on charges related to the March 27, 2019 robbery of a T-Mobile store in Brockton that escalated into a police chase during which the perpetrators fired their weapons at police officers from their getaway car. The Defendant has been charged with conspiracy to interfere with commerce by robbery (Count I), interference with commerce by robbery (Count II), discharging, brandishing, using, and carrying a firearm in relation to a crime of violence (Count III), and being a felon in possession of firearms and ammunition (Count IV, Count V). [ECF No. 55 at 1–6].

Presently before the Court is the Government's *ex parte* motion for a protective order for non-disclosure of information concerning the criminal arrest history of a cooperating witness (the "Witness"). [ECF No. 167]. The Government asserts that because the arrests are not admissible as impeachment evidence against the Witness, the underlying reports do not need to be produced in discovery. [Id. at 3]. The Government's motion, [ECF No. 167], is <u>GRANTED</u> in part and <u>DENIED</u> in part, based on the Court's finding that some of the police reports indicate that the

Witness may have lied to police officers and may therefore contain proper impeachment material.  At this time, the Court rules only that those reports must be turned over and reserves a decision on use and admissibility.

I.      BACKGROUND

The Witness' arrest record includes instances of threats, violence, domestic violence, possession of controlled substances, and juvenile offenses, [ECF No. 167 at 8–21], none of which would be admissible to impeach him at trial, as they are not relevant to his credibility as a witness.  The following arrest records, however, include instances in which the Witness may have lied to police officers.

First, on March 9, 2016 (the "March 2016 incident"), the Witness was pulled over when officers determined that he was driving a car with cancelled license plates.  The Witness told the police that he had "purchased the vehicle a few weeks ago" and "did not have his license on him."  [ECF No. 167 at 11].  A CJIS query revealed that the Witness did not in fact have a driver's license.  [Id.].  The case, listed on the Witness' criminal record as possession of narcotics with intent to distribute and motor vehicle offenses, was dismissed.  [Id. at 2, 11].

Second, on July 13, 2016 (the "July 2016 incident"), a police officer query revealed that a suspect, later identified as the Witness, was driving an unregistered vehicle.  [Id. at 15].  When police officers activated their sirens, the Witness began driving erratically before he eventually abandoned the vehicle while it was still moving and attempted to run away.  [Id.].  The moving vehicle eventually came to a stop after hitting other cars in the area.  [Id.].  The Witness admitted that he was driving without a license and claimed to have purchased the vehicle that same day.  [Id.].  The case is listed on the Witness' criminal record as a conviction and the report has already been disclosed to the Defendant.  [Id. at 2–3, 15].

Third, one of the police reports suggests that on August 29, 2016 (the "August 2016 incident"), the Witness may have lied to police officers about having a Xanax prescription. Police officers intervened after seeing the Witness physically attack a victim. [Id. at 17]. The Witness told the officers that the victim had attempted to purchase drugs from his female friend and stolen twenty dollars from the Witness. [Id.]. As the Witness reached into his pocket for his identification, a yellow pill, later identified as Xanax, fell out of his pocket. [Id.]. The Witness claimed to have a prescription. [Id.]. When officers asked if he had other pills, he remained silent. [Id.]. Officers discovered three other pills in the Witness' pocket. [Id.]. The case is listed on the Witness' criminal record as a conviction for assault and drug possession. [Id. at 3, 17].

Finally, the police record suggests that the Witness may have lied to police about his own personal crack cocaine consumption. [Id. at 19]. On November 9, 2017 (the "November 2017" incident"), police officers observed a group huddled together next to the side of a building. [Id.]. Officers saw one individual pull out a rectangular tin box from his jacket pocket and hand a small item to another individual. [Id.]. After the group noticed the police, they attempted to disperse. [Id.]. When the police approached the Witness, they noticed that he appeared nervous and was unable to complete a sentence. [Id.]. After the Witness refused multiple police commands, officers searched the Witness' person and found two plastic bags containing what they believed to be crack cocaine. [Id.]. The Witness told the police that he had just purchased the crack for his personal consumption. [Id.]. Officers did not recover a crack pipe or any other paraphernalia used to ingest crack cocaine. [Id.]. The case is listed on the Witness' criminal record as a conviction for possession with intent to distribute. [Id. at 3, 19].

## II. LEGAL STANDARD

Evidence that could be favorable to a defendant is subject to disclosure under Giglio v. United States, 405 U.S. 150 (1972) and Brady v. Maryland, 373 U.S. 83 (1963), but only if the evidence is admissible. Under Federal Rule of Evidence 608(b),

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
> (1)   the witness; or
> (2)   another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). In determining the admissibility of such impeachment evidence, the Court must consider "several factors including whether the instances of prior conduct bear some similarity to the conduct at issue, whether they were recent or remote in time, and whether the evidence is cumulative of other evidence." United States v. Thiongo, 344 F.3d 55, 59–60 (1st Cir. 2003) (citation omitted).

## III. DISCUSSION

Though the Government is correct that much of the Witness' arrest record would not be probative of his credibility as a witness, the instances described above, all relatively recent with the oldest occurring in 2016, at least suggest that the Witness may have lied to police officers which may be probative and admissible.

Under Federal Rule of Evidence 608 and 609, extrinsic evidence of a criminal conviction may be used to attack a witness's credibility if the witness is not the defendant and the crime was punishable by imprisonment for more than one year. Fed. R. Evid. 609. See also Fed. R. Evid. 608(b) (prohibiting the use of extrinsic evidence to impeach a witness "except for a criminal conviction under Rule 609").

Even if extrinsic evidence of the convictions would not be allowed at trial or if no conviction resulted, the Defendant may still be able to use the conduct described in the reports on cross-examination to attack the Witness' character for truthfulness or untruthfulness. Fed. R. Evid. 608(b). Therefore, the motion must be denied insofar as it seeks a protective order for non-disclosure of the reports that pertain to the March 2016 incident, July 2016 incident, August 2016 incident, and the November 2017 incident.

## IV. CONCLUSION

Accordingly, the Government's motion, [ECF No. 167], is GRANTED in part and DENIED in part. The motion is DENIED insofar as it seeks a protective order allowing the non-disclosure of the police reports arising from the March 2016 incident, July 2016 incident, August 2016 incident, and the November 2017 incident.

**SO ORDERED.**

March 5, 2020                                         /s/ Allison D. Burroughs
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE