UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * * * | |
| v. | * * | |
| DIOVANNI CARTER, | * * | Criminal Action No. 19-cr-10104-ADB |
| Defendant. | * * * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Diovanni Carter ("Petitioner") was sentenced to 270 months incarceration after a jury, following a 9-day trial, convicted him of three charges relating to an armed robbery that was followed by a police chase with shots fired in a residential neighborhood. [ECF No. 279]. Currently pending before the Court is Petitioner's *pro se* petition to vacate his sentence, pursuant to 28 U.S.C. § 2255. [ECF Nos. 386, 405]. The Government opposes, and requests summary dismissal of the petition. [ECF Nos. 394, 407]. For the reasons stated below, the petition, [ECF Nos. 386, 405], is **DENIED**.

I.  **BACKGROUND**

  A.  **Factual Background**

On September 11, 2019, Petitioner was charged in a superseding indictment with conspiracy to interfere with and interference with commerce by robbery (18 U.S.C. § 1951(a), Counts 1 and 2); the discharge, brandishing, use, and carrying of a firearm in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A), Count 3); and being a felon in possession of firearms and ammunition (18 U.S.C. § 922(g)(1), Counts 4 and 5). [ECF No. 55 at 2–6]. The charges

1

stemmed from Petitioner's involvement in planning and executing a robbery of a T-Mobile store in Brockton, Massachusetts in January 2019 that escalated into a police chase during which the perpetrators fired their weapons at officers from their getaway car. [Id.; ECF No. 90 at 1].

Throughout the proceedings, Petitioner's counsel ("Counsel") was aggressive, conscientious, and attentive. Prior to the trial of this case, Counsel successfully advocated for Petitioner's trial to be severed from that of his co-defendants. [ECF No. 111]. He also filed numerous pretrial motions and motions *in limine*, [ECF Nos. 121–129, 134], sought additional discovery related to the Government's DNA evidence, [ECF Nos. 104, 105], engaged expert witnesses to assist in the defense, [ECF Nos. 40, 177], and obtained jailhouse recordings of the Government's cooperating witness via an *ex parte* motion, [ECF No. 394 at 17].

Petitioner's trial began before this Court on March 2, 2020. [ECF No. 191]. At trial, the Government presented evidence establishing that Petitioner had provided one of the firearms used, drove the getaway car, and instructed those in the car to shoot at police during the chase. [ECF No. 354 at 2–3]. The jury heard the testimony of a cooperating co-defendant, Dennis Martin ("Martin"), and the prosecution played excerpts of a recorded conversation between Petitioner's incarcerated co-defendant and brother, Darius Carter, and his parents that implicated Petitioner in the robbery. [Id. at 3]. The defense did not challenge that the robbery and subsequent chase took place but rather argued that the prosecution could not prove that Petitioner, who never entered the store during the robbery, was involved. [ECF No. 394 at 2]; see generally [ECF Nos. 238–243, 245, 299 (jury trial transcripts)].

On March 12, 2020, the jury convicted Petitioner of Counts 1, 2, and 3, but acquitted him of Counts 4 and 5. [ECF No. 211]. He was sentenced to a total term of imprisonment of 270 months, including 150 months for Counts 1 and 2, served concurrently, and 120 months for

Count 3, to be served consecutively to the prior terms. [ECF No. 279]. Petitioner filed a notice of appeal on the judgment on September 30, 2020. [ECF No. 281]. With the assistance of separate appellate counsel, Petitioner challenged his three convictions on the basis that Darius Carter's jailhouse call was impermissibly admitted hearsay evidence and that the jury was improperly instructed on Pinkerton liability. [ECF No. 354 at 4]. Lastly, Petitioner asked that the First Circuit Court of Appeals vacate his sentence because the sentencing guidelines were improperly applied. [Id.].

On December 2, 2021, the First Circuit affirmed his convictions and sentence. United States v. Carter, 19 F.4th 520, 530 (1st Cir. 2021).

### B.  Procedural Background

On July 7, 2022, Petitioner, proceeding *pro se*, filed a motion to vacate his sentence under 28 U.S.C. § 2255 on three separate grounds: (1) that Counsel provided ineffective assistance; (2) that the Hobbs Act robbery count cannot be enhanced through the charging of a Section 924(c) count; and (3) that the Pinkerton instruction to the jury was erroneous. [ECF No. 386]. Pursuant to the Court's Service Order, [ECF No. 387], the Government filed its opposition on July 28, 2022, [ECF No. 394].

With this motion still pending, the Court received another 28 U.S.C. § 2255 motion to vacate from Carter. [ECF No. 405]. The 5-page motion was identical to the one filed on July 7, except that Petitioner had attached an additional affidavit and two exhibits. In the interest of fairness for all parties, and in light of Carter's *pro se* status, the Court construed this as a supplemental filing to the existing motion and stated it would consider both motions together. [ECF No. 406]. The Government was afforded an opportunity to submit an additional reply, which it did on December 5, 2022. [ECF No. 407].

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255(a), individuals in federal custody can move the sentencing court to vacate, set aside, or correct their sentence if: 1) "the sentence was imposed in violation of the Constitution or laws of the United States;" 2) "the court was without jurisdiction to impose such sentence;" 3) "the sentence was in excess of the maximum authorized by law;" or 4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing 28 U.S.C. § 2255).

> The catch-all fourth category includes only assignments of error that reveal "fundamental defects" which, if uncorrected, will "result[ ] in a complete miscarriage of justice," or irregularities that are "inconsistent with the rudimentary demands of fair procedure." In other words, apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal "exceptional circumstances" that make the need for redress evident.

David, 134 F.3d at 474 (citation omitted) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

While the petitioner has the burden to show he is entitled to relief under § 2255, David, 134 F.3d at 474, "[p]ro se habeas petitions normally should be construed liberally in petitioner's favor," United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner's primary grounds for resentencing and/or vacatur relate to alleged ineffective assistance on the part of Counsel. Specifically, Petitioner argues that Counsel failed to: 1) conduct proper pretrial investigation; 2) challenge the use of cell tower data as evidence; 3) challenge the indictment for deficiencies, including a lack of probable cause for arrest; 4) effectively cross-examine the prosecution's witnesses, including challenging Martin's testimony;

and 5) present testimony from Darius Carter that would support Petitioner's position that he did not take part in the robbery.  [ECF No. 405 at 2, 4–5].

Strickland v. Washington, 466 U.S. 668 (1984), established the standard to be applied in determining whether counsel's assistance violated the Sixth Amendment.  To succeed under Strickland, a petitioner must show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland, 466 U.S. at 684)).  The Supreme Court has repeatedly stressed that "[s]urmounting Strickland's high bar is never an easy task."  Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).

Under the Strickland standard, "[d]efense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his [or her] energies.  This is especially true during trial, when time is short."  Phoenix v. Matesanz, 233 F.3d 77, 84 (1st Cir. 2000); Strickland, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). "[C]ounsel . . . is not required to pursue every path until it bears fruit or until all available hope withers."  Genius v. Pepe, 147 F.3d 64, 67 (1st Cir. 1998) (quoting Solomon v. Kemp, 735 F.2d 395, 402 (11th Cir. 1984)).  The First Circuit has explained, for example, that it "will find deficient performance '[o]nly when counsel's strategy was "so patently unreasonable that no competent attorney would have made it."'"  Casey v. United States, 100 F.4th 34, 42 (1st Cir. 2024) (quoting Watson v. United States, 37 F.4th 22, 28 (1st Cir. 2022) (quoting Tevlin v.

5

Spencer, 621 F.3d 59, 66 (1st Cir. 2010))). In sum, the bipartite Strickland test is broadly deferential to the decisions of trial counsel. 466 U.S. at 689.

Here, as discussed further infra, because the Court cannot find that Counsel's performance or strategy was "so patently unreasonable that no competent attorney would have made it," Casey, 100 F.4th at 42, it declines to grant Petitioner's motion on an ineffective assistance of counsel theory.

### 1. Failure to Investigate

Petitioner first argues that Counsel was ineffective for failing to conduct an adequate pretrial investigation. [ECF No. 405 at 2 ("[D]efense counsel did not properly cross examine the prosecution[']s witness[es] in conjunction with the 6th [A]mendment to investigate the circumstances of the case[.]")[1]]; [ECF No. 405-1, Carter Affidavit ("Carter Aff.") ¶ 4 ("My private investigator obtained by lawyer could of did a more thorough investigation of exculpatory evidence."); ¶ 6 ("They never identified a perpetrator from forensic information, camera footage in or out of store.")]; [ECF No. 405-1, Statement of Facts ("SOF") ¶ 4 ("[T]here was no investigation of the persons who were accused of the same thing that prove the defendant[']s innocence[;] this was a der[e]liction of counsels and prosecutions duty to look for the truth of the matter[.]")][2]. The Government responds that Petitioner "fails to state what issues defense counsel was unsuccessful in investigating and omits any indication of what such an investigation might have uncovered." [ECF No. 394 at 7]. The Government also contends that

---

[1] Petitioner's alleged deficiency here is difficult to discern. As he is *pro se*, and construing every inference in his favor, the Court views this as raising two challenges to defense counsel's performance: failure to investigate pretrial and failure to effectively cross examine prosecution witnesses.
[2] The attachment to Petitioner's motion, ECF No. 405-1, contains two components: 1) Petitioner's "affidavit," [id. at 1–2], and 2) a statement of facts, [id. at 3–5].

6

Counsel conducted an "extremely thorough investigation" that was "powerfully used during cross-examination of the cooperating witness," and, as such, "Defendant has failed to allege any error by his counsel with respect to pretrial investigation, let alone one causing prejudice." [Id. at 7–8].

Petitioner's assertions that Counsel failed to adequately investigate are unpersuasive, especially in light of their lack of particularity. Trial counsel "'has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' But this duty does not invariably require a lawyer, at all times and under all circumstances, to probe every evidentiary lead." Janosky v. St. Amand, 594 F.3d 39, 49 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 691). "[A] decision to eschew investigation 'must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Id. (quoting Strickland, 466 U.S. at 691).

Petitioner's unsupported claims that Counsel's private investigator could have done more or that Counsel did not investigate "persons who were accused of the same thing" are insufficient to establish that Counsel unreasonably eschewed certain areas of investigation. In fact, the trial record in this case reflects that Counsel did engage in quite a bit of pretrial investigation, despite the trial's fast pace. This includes, among other things, hiring a private investigator, [Carter Aff. ¶ 4], filing multiple discovery motions, [ECF Nos. 49, 51, 104], and submitting *ex parte* requests for discovery by which Petitioner "obtained access to the jail recordings of the cooperating witnesses that were never reciprocally disclosed until cross-examination and used to great rhetorical effect," [ECF No. 394 at 17]. These actions reflect a diligent and creative approach to pretrial discovery that falls squarely "within the wide range of reasonable professional assistance" expected of defense counsel. Strickland, 466 U.S. at 689. Thus, the Court declines

7

to grant Petitioner's motion on the ground that his Counsel failed to conduct an appropriate pretrial investigation

### 2. Failure to Challenge Cell Tower Evidence

Petitioner next argues that Counsel was ineffective for failing to challenge the "illicit" use of cell tower evidence, citing to Carpenter v. United States, 585 U.S. 296 (2018). [ECF No. 405 at 4 ("Counsel failed to challenge illicit use of cell phone ping off cell towers by the police to utilize unfounded claims against petitioner for trial purposes.")]. The Government contends that this citation to Carpenter "suggests that the Defendant is arguing counsel was ineffective for failing to challenge the search warrant seeking the cell site evidence" and that, while it is true that defense counsel did not challenge the search warrant for the cell data, this was "an eminently reasonable strategic decision." [ECF No. 394 at 8–9]. In support, the Government argues that 1) a motion to suppress was likely to be denied, and 2) filing the motion to suppress would have required Petitioner to establish an expectation of privacy in the phone number, thereby foreclosing "any potential argument at trial that [Petitioner] was not the user of the phone." [Id. at 9–10].

The Court agrees with the Government that "there was a clear and obvious strategic reason to not challenge the search warrant," [ECF No. 394 at 9], namely, that Petitioner was not the subscriber of the phone, see [ECF No. 242 at 117:16–119:1]. By not admitting to a privacy interest in the phone, Counsel put the Government to its burden to attribute the use of the phone to Petitioner. At trial, this required the Government to put on extensive evidence, including "multiple witnesses from the Defendant's employer, digital evidence from James Boddie's phone, Google records for [a] Gmail account, a keeper of the record from Capital One, Carshana Graham, and records from Hertz." [ECF No. 394 at 9]. While challenging the warrant was

among Counsel's options, Counsel's decision to avoid having Petitioner assert a privacy interest in the phone and instead put the Government to its burden was not so "patently unreasonable that no competent attorney would have made it." Casey, 100 F.4th at 42 (internal quotations omitted). As such, this is not grounds for Petitioner's motion.

### 3. Failure to Challenge the Indictment

Petitioner's third argument for ineffective assistance is that Counsel failed to challenge the indictment on the grounds that probable cause was defective. [ECF No. 405 at 5 ("Counsel failed to protect the defendant against a 4th Amendment violation by not challenging the indictment for deficiencies . . . In that probable cause for arrest was defective[.]")].

Although unclear what precisely Petitioner is alleging his counsel should have done to "challeng[e]" the indictment, to the extent he is contending that his counsel should have moved to dismiss the indictment, dismissal of an indictment prior to trial "is reserved for 'extremely limited circumstances.'" United States v. O'Brien, 994 F. Supp. 2d 167, 173 (D. Mass. 2014) (quoting United States v. George, 839 F. Supp. 2d 430, 435 (D. Mass. 2012), aff'd, 761 F.3d 42 (1st Cir. 2014)). "In general, an indictment is adequate if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy." United States v. Savarese, 686 F.3d 1, 6 (1st Cir. 2012). As such, "[d]efendants challenging the sufficiency of an indictment bear a heavy burden." United States v. Perry, 37 F.Supp.3d 546, 550-51 (D. Mass. 2014).

Here, the superseding indictment clearly charged the essential elements of the offense, fairly informed Petitioner of the specific charge against which he would have to defend, and was sufficiently specific to permit a later defense of double jeopardy. [ECF No. 55]. Accordingly, Counsel did not prejudice Petitioner by failing to file a motion to dismiss the indictment.

### 4.  Failure to Effectively Cross-Examine Prosecution Witnesses

Petitioner additionally argues that Counsel was ineffective during cross examination. [ECF No. 405 at 2 ("[D]efense counsel did not properly cross examine the prosecution[']s witness[es] in conjunction with the 6th [A]mendment to investigate the circumstances of the case[.]")]; [SOF ¶ 5 ("[F]ailure of the defense to cross examine the witness created prejudice for the defense.")].  He points, in particular, to two areas of cross-examination he believes should have been explored: 1) Officer Sylverson Robinson's conflicting statements of how many individuals were involved in the robbery, and 2) the fact that Martin was on probation for home invasion at the time of the robbery and the trial.  [Carter Aff. ¶ 5 ("Police officer Robinson should have been cross examined thoroughly by defense counsel to retrieve on the record exculpatory material information of conflict number of people involved[.]  The record reflects originally 3 defendants and stated 4 in trial.")]; [SOF ¶ 5 ("[C]ross examination the facts would have [] revealed that Dennis Martin was on probation for home invasion at the time of the robbery and trial of this present case.")].

"Where, as here, a petitioner asserts that counsel failed to introduce evidence or challenge the credibility of government witnesses on cross-examination, [the First Circuit] consider[s] three factors: 'first, the strength of the prosecution's case; second, the effectiveness of the defense that was presented at trial; third, the potential value of the new evidence and new avenues for cross-examination in undermining the credibility of the government witnesses' testimony.'"  Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012) (quoting Dugas v. Coplan, 506 F.3d 1, 9 (1st Cir. 2007)).[3]

---

[3] This three-part test relates to the prejudice prong of the Strickland analysis.  Turner, 699 F.3d at 584.  Because the Government chose to focus its briefing on this prong, see [ECF No. 394 at 12], the Court does the same.

First, regarding the strength of the prosecution's case, the First Circuit noted in considering Petitioner's appeal of his judgment that "[a] sizeable body of [] evidence introduced by the government served to establish [Petitioner's] participation in the robbery." United States v. Carter, 19 F.4th 520, 525 (1st Cir. 2021). This Court agrees. Moreover, as relevant to the second prong, among that sizeable body of evidence were extremely effective cross examinations of prosecution witnesses, including a cross examination of the prosecution's DNA expert that helped achieve Petitioner acquittals on Counts Four and Five. [ECF No. 243 at 67–117]. Counsel also thoroughly cross-examined Martin, which included extensive questioning on the jail recordings detailed supra. [ECF No. 240 at 116–77]

Finally, Petitioner fails to point to any new evidence or avenues for cross-examination that could have impacted his trial. See United States v. Lassend, No. 10-cr-40019, 2017 WL 2960518, at *5 (D. Mass. July 11, 2017), aff'd, 898 F.3d 115 (1st Cir. 2018) ("As to the final factor, Lassend has not identified any new avenues from cross-examination, nor does it appear from the trial transcripts that any additional avenues of impeachment were available."). Counsel did in fact question Martin and Officer Robinson on the areas identified in Petitioner's motion. [ECF No. 139 at 48–51 (defense counsel impeaching Officer Robinson with prior statement that he saw three people exit car upon trial testimony that it was four people)]; [ECF No. 240 at 118:7–10 (Q: "So you were on probation for armed robbery out of Middlesex County when you committed this armed robbery in Plymouth County on January 26, 2019, right?" A: "Yeah, that's correct.")]; see also Phoenix v. Matesanz, 233 F.3d 77, 84 (1st Cir. 2000) ("The mere fact that [counsel's] cross-examination failed to persuade the jury of [defendant's] innocence is not enough to establish ineffective assistance."). In fact, Counsel not only cross-examined Martin on his probation, but also touched on it in the opening statement. [ECF No. 238 at 52:7–11 ("He

11

was actually on probation out of Middlesex Superior Court on his conviction for armed robbery when he committed this armed robbery in Plymouth County.  He's lied to the police on multiple occasions.  He's made promises to courts he hasn't kept.")].

Petitioner's claim for ineffective cross-examination fails on all three factors and, as a result, the Court declines to grant the motion on this ground.

### 5.    Failure to Present Darius Carter's Testimony

Finally, Petitioner argues that his counsel was ineffective because he should have called Petitioner's brother, Darius Carter, to provide testimony.  [ECF No. 405 at 2 ("Darius Carter had made the phone [call] home expressing the fact that his brother was nowhere at these robberies or [in]volved with any of them.  This was/is a clear violation of the confrontation clause of the 6th Amendment.")]; [SOF ¶ 6 ("[T]here was an opportunity to have evidence produced by and through the testimony of the brother of Diovanni Carter[.]")].  The Government responds that "the claim that testimony from Darius Carter would have supported the defense is readily refuted by Darius Carter's own sworn allocution."  [ECF No. 394 at 15].

Petitioner has offered no evidence or argument to rebut the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, particularly given that it appears Darius Carter's testimony would have been affirmatively harmful to Petitioner's case, rather than helpful.  During his Rule 11 hearing, under penalty of perjury, Darius Carter agreed, among other things, that he committed the robbery with Petitioner, who was driving the car, and that he fired a weapon at the police at Petitioner's instruction.  See generally [ECF No. 394-1].  Because this sworn testimony would only have further provided evidence in support of Petitioner's conviction, Petitioner has not demonstrated that his counsel was unreasonable in failing to call Darius Carter, nor has he established a

"reasonable probability" that calling his brother "would have changed the outcome of the case and has therefore failed to demonstrate prejudice." United States v. Morales, No. 09-cr-10315, 2017 WL 1312951, at *6 (D. Mass. Apr. 6, 2017) (citing Strickland, 466 U.S. at 694–95).

### B.   Hobbs Act Robbery Sentencing Enhancement

While not entirely clear, Petitioner also appears to challenge whether Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3). [ECF No. 405 at 3 ("And in the pres[e]nt rulings of Davis and T[]aylor the offenses charged do not qualify for defendants Hobbs Act Robbery conviction or said enhancements to his case."); id. at 5 ("Counsel failed to assist petitioner from being convicted for Hobbs Act Robbery, conspiracy . . . where conspiracy is no longer considered a crime of violence for enhancement purposes[.]")]. In so arguing, Petitioner cites to United States v. Davis, 588 U.S. 445 (2019) and United States v. Taylor, 596 U.S. 845 (2022). Neither case, however, says anything on the key issue here—whether a completed Hobbs Act robbery is a "crime of violence" under the elements clause of § 924(c). Davis, 588 U.S. at 470 (holding § 924(c)(3)(B)'s residual clause was unconstitutional but saying nothing about elements clause); Taylor, 596 U.S. at 851 (holding attempted Hobbs Act robbery does not satisfy the elements clause, stating "[w]hatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause"). On this issue, the First Circuit has held that a completed Hobbs Act robbery categorically is a crime of violence under the elements clause, see United States v. Garcia-Ortiz, 904 F.3d 102, 109 (1st Cir. 2018), and it recently reaffirmed that holding in light of Davis and Taylor, Diaz-Rodriguez v. United States, No. 22-1109, 2023 WL 5355224, at *1 (1st Cir. Aug. 14, 2023) ("Because the court relied on the § 924(c) force clause in concluding that Hobbs Act robbery constitutes a 'crime of violence' in Garcia-Ortiz, the decision remains good law after Davis. Further, petitioner's

13

attempted reliance on Taylor is misplaced, as he was not charged with or convicted of an attempt offense."). As such, Petitioner's argument is not grounds for relief.

### C. Pinkerton Instruction

Finally, Petitioner contends that he is entitled to relief because the jury at his trial did not understand the Pinkerton liability instruction. [ECF No. 405 at 2 ("[T]he jury at trial did not understand the [P]inkerton liability instruction f[rom] the judge and the trial should have been stopped until this instruction was understood entirely by the jury.")]. This claim, however, was previously raised, considered, and denied on Petitioner's direct appeal. Carter, 19 F.4th at 527. Such "[c]laims that previously have been addressed on direct review . . . may not be readjudicated collaterally under § 2255 absent equitable considerations, such as actual innocence or cause and prejudice." Conley v. United States, 323 F.3d 7, 22 (1st Cir. 2003). Petitioner has raised no such equitable considerations here, and thus his motion cannot be granted on these grounds.

## IV.  CONCLUSION

Accordingly, the petition, [ECF Nos. 386, 405], is **DENIED**.

**SO ORDERED.**

March 5, 2025               */s/ Allison D. Burroughs*
                            ALLISON D. BURROUGHS
                            U.S. DISTRICT JUDGE